[Civ. No. 32109.   Second Dist., Div. One.   June 3, 1968.]

CHARLES AUSTIN FINLEY, Plaintiff and Appellant, v. VERNE ORR, as Director of the Department of Motor Vehicles, Defendant and Respondent.

Day, Atkinson, Adden & Gibson, Atkinson, Adden & Gibson and William B. Gibson for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, David Gould and Lynn Henry Johnson, Deputy Attorneys General, for Defendant and Respondent.

WOOD, P. J.—Petitioner Finley appeals from a judgment denying his petition for a writ of mandate compelling the respondent Director of the Department of Motor Vehicles to set aside the department's decision suspending petitioner's driving privilege for six months.

Appellant contends that (1) his privilege against self-incrimination was violated, at the department hearing, by receiving evidence of his refusal to submit to a chemical test of his blood, breath, or urine (Veh. Code, § 13353); (2) he was denied his right to have counsel present when he was called upon, while in custody of the police, to decide whether he would submit, or refuse to submit, to one of the tests; (3) he was denied due process of law in that the judicial function of determining reasonable cause for his arrest was delegated (by provision of Veh. Code, § 13353) to the department; (4) the procedure followed by the department denied him due process of law in that he did not have a fair hearing before an

impartial tribunal; and (5) the findings (by department and by superior court) are not supported by substantial evidence.

On February 4, 1967, about 10:25 p.m., Officer Ewen saw petitioner driving an automobile near an intersection in Lakewood. The automobile stopped at a red traffic light, started into the intersection while the light was red, and then stopped at a place which was about five feet within the intersection. When the light changed to green, the automobile remained stationary for approximately 10 seconds, and then "took off suddenly" and weaved back and forth from lane to lane. The officer, after causing the driver to stop the automobile, noticed that the driver (petitioner) had a strong odor of alcohol on his breath. Petitioner failed a "simple balance test" and was arrested for violating section 23102, subdivision (a), of the Vehicle Code (driving vehicle while under influence of intoxicating liquor).

At the police station, petitioner was advised that he had a right to remain silent and a right to have an attorney present during the questioning; that if he could not afford an attorney, the public defender would be appointed to represent him; and that anything he said could be used against him in court. He said that he understood those rights, and that he wanted to remain silent and wanted an attorney.

The officer read the following statement to petitioner: "You are requested to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. A refusal will result in the suspension of your driving privilege for a period of six (6) months." He replied: "Sure I refuse. If I lose my license, I don't care. I can afford a driver. I have plenty of money."

The officer again asked him to take the test and told him that the Department of Motor Vehicles required that he submit to one of the three types of test, and that the test could be used in evidence for him or against him. He replied that he "would do it," and the officer explained the procedure for giving a breathalyzer test. Petitioner placed the mouthpiece in his mouth, "but refused to blow." He was given "four or five opportunities to blow, and he refused to do so each time." The officer told him that they were not going to waste any more time, and asked him to sign a "refusal statement" —a statement that he had refused to take any test. He replied that he would not sign the statement unless his lawyer was present. He did not take a test or sign the statement.

Petitioner's request for a formal hearing was granted by the department (Veh. Code, § 14107 et seq.) A hearing was had before a referee, and petitioner was represented by counsel. Officer Ewen and petitioner testified, and the officer's affidavit (Veh. Code, § 13353, subd. (b)) and other exhibits were received in evidence. Some of the evidence was in substance as hereinabove set forth. Petitioner did not object to any of the evidence relating to his refusal to take the test. The substance of petitioner's testimony is in a footnote.[1] The referee found that the officer had reasonable cause to believe that petitioner had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor; petitioner was arrested; petitioner refused to submit to a test of his blood, breath, or urine to determine the alcoholic content of his blood; and petitioner had been told that his driving privilege would be suspended if he refused to submit to the test. The referee recommended that the provisions of section 13353 of the Vehicle Code "be applied." (Said section provides in part that if a person refuses an officer's request to submit to a chemical test of his blood, breath, or urine, the department shall suspend his driving privilege for six months.) The deputy director of the department reviewed the findings and decided that "the suspension is proper."

Petitioner then filed a petition in the superior court for a writ of mandamus compelling the director of the department to set aside the decision suspending his driving privilege. The court found that all of the findings of the department are supported by the weight of the evidence, and denied the petition.

■ ·· Appellant contends, as above stated, that his privilege against self-incrimination was violated, at the department hearing, by receiving evidence of his refusal to submit to a chemical test of his blood, breath, or urine (Veh. Code, § 13353).

---

[1]Petitioner testified in substance that when he was arrested he was advised of his right to an attorney; he told the officers that he would not say anything unless his attorney was present; he is the president of a corporation and has to protect his insurance and his driving privilege; the officers took an hour and a half to book him; he kept asking them to call his attorney; they called the attorney, but they did not let him call the attorney; they "kept" him all night and "rousted" him around; they asked him to take a breathalyzer test, and he said he would take it if they would get his attorney; and the second time they asked him to take the test, he said he would take it if his attorney was there, or if they would "call a doctor."

Section 13353 of the California Vehicle Code, which is similar to "implied consent" laws enacted in several other states,[2] provides in part as follows: " (a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months. The person arrested shall have the choice of whether the test shall be of his blood, breath or urine. . . . (b) If any such person refuses the officer's request to submit to a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months." Other provisions of section 13353, and provisions of other sections of the Vehicle Code (§ 13952 et seq.) relate to notice and hearing by the department relating to suspension of driving privileges under section 13353.

In *Schmerber* v. *California*, 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], a report of the chemical analysis of a blood sample taken from the petitioner (driver) even though he refused to submit to the blood test was received in evidence in a criminal prosecution of petitioner for driving a vehicle while under the influence of intoxicating liquor (Veh. Code, § 23102, subd. (a)). It was held therein that the admission of

[2]Idaho (see *State* v. *Bock*, 80 Idaho 296 [328 P.2d 1065, 1067]) ; Missouri (see *Blydenburg* v. *David* (Mo.) 413 S.W.2d 284, 285) ; Kansas (see *Lee* v. *State*, 187 Kan. 566 [358 P.2d 765, 766]) ; New York (see *Finocchairo* v. *Kelly*, 11 N.Y.2d 58 [181 N.E.2d 427, 428]) ; Virginia (see *Walton* v. *City of Roanoke*, 204 Va. 678 [133 S.E.2d 315, 316] ; South Dakota (see *Beare* v. *Smith*, 82 S.D. 20 [140 N.W.2d 603, 604-605]) ; Iowa (see *Gottschalk* v. *Sueppel*, 258 Iowa 1173 [140 N.W.2d 866, 868]) ; and Nebraska (see *Prucha* v. *Department of Motor Vehicles*, 172 Neb. 415 [110 N.W.2d 75, 80, 88 A.L.R.2d 1055]),

the report in evidence did not violate petitioner's privilege against self-incrimination.

In *Gilbert* v. *California,* 388 U.S. 263, 266-267 [18 L.Ed.2d 1178, 1182, 87 S.Ct. 1951], it was held that the taking of exemplars of petitioner's handwriting did not violate his privilege against self-incrimination, and it was said: "The privilege reaches only compulsion of an accused's communications . . . , and not compulsion which makes a suspect or accused the source of 'real or physical evidence'. . . . [citing *Schmerber* v. *California, supra*]. . . . A mere handwriting exemplar . . . , like the voice or body itself, is an identifying physical characteristic outside its protection." It has also been held that the privilege against self-incrimination offers no protection against compulsion to submit to fingerprints, photography, or measurements, or to speak or write for identification. (*United States* v. *Wade,* 388 U.S. 218, 223 [18 L.Ed. 2d 1149, 1155, 87 S.Ct. 1926].)

In *People* v. *Sudduth,* 65 Cal.2d 543 [55 Cal.Rptr. 393, 421 P.2d 401], the defendant was found guilty of driving a vehicle while under the influence of intoxicating liquor (Veh. Code, § 23102), and he contended on appeal that his privilege against self-incrimination was violated by the admission of evidence of his refusal to take a breathalyzer test to determine the percentage of alcohol in his blood. The court rejected the contention and held (p. 546) that suspects have no constitutional right to refuse a test designed to produce physical evidence in the form of a breath sample. The court noted (p. 547) that other states, which recognize a right to refuse to take such tests, exclude evidence of a refusal. (See note 87 A.L.R.2d 370; cf. *State* v. *Bock,* 80 Idaho 296 [328 P.2d 1065], admission of evidence of defendant's refusal to take blood test held not a violation of defendant's privilege against self-incrimination.)

In *People* v. *Bustos,* 247 Cal.App.2d 422, 424 [55 Cal.Rptr. 603], defendant asserted on appeal that the admission of evidence of a blood sample taken from him violated his privilege against self-incrimination. The court held (p. 424) that the decision in *Schmerber* v. *California (supra)* "squarely negates defendant's assertion."

In other states which have implied consent laws similar to section 13353 of the California Vehicle Code, it has been held, in civil proceedings for suspension of a person's driving privilege, that admission of evidence of the person's refusal to take the required tests, does not violate his privilege against

self-incrimination. (See *Blydenburg* v. *David* [Mo.] 413 S.W.
2d 284; *Lee* v. *State*, 187 Kan. 566 [358 P.2d 765]; *Prucha* v.
*Department of Motor Vehicles*, 172 Neb. 415 [110 N.W.2d 75,
88 A.L.R.2d 1055].)

It thus appears that petitioner herein did not have a consti-
tutional right to refuse to submit to the test, and that the
admission of evidence of his refusal[3] did not violate his privi-
lege against self-incrimination. He argues, however, that
although the *Schmerber* case permits the compulsion of
"physical evidence," it does not permit the compulsion of
"testimony"; that in the present case, when petitioner was
asked to submit to the test, he said, "I refuse"; and that
thereby he was compelled to give testimony against himself.

In the *Sudduth* case, *supra*, the opinion does not state in
what manner the defendant expressed his refusal to submit to
the breathalyzer test—i.e., whether he expressed his refusal
verbally or by non-verbal conduct. Also, the opinions in the
*Blydenburg, Lee,* and *Prucha* cases (*supra*) do not state
whether the refusals therein were expressed verbally or non-
verbally. Presumably, the refusals were verbal. In view of the
holding in *Sudduth* that there is no constitutional right (in
California) to refuse to take the tests, it would appear that evi-
dence of the refusal would be admissible whether the refusal
was verbal or non-verbal. In any event, in the present case,
after the petitioner had said, "I refuse," he was given further
advice regarding the requirement that he submit to the tests.
He then said that he "would do it," and he was subjected to a
breathalyzer test; however, he would not blow into the mouth-
piece although he was given four or five opportunities to do
so. After that conduct by petitioner, the officer concluded that
petitioner had refused to submit to the test. It thus appears
that ultimately the refusal was non-verbal. The evidence of
petitioner's refusal to submit to the test did not violate his
privilege against self-incrimination.

■  Appellant further contends, as above stated, that he
was denied his right to have counsel present when he was
called upon, while in custody of the police, to decide whether
he would submit, or refuse to submit, to one of the tests. In
this connection he cites *Miranda* v. *Arizona*, 384 U.S. 436 [16
L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and *Escobedo* v.
*Illinois*, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]).

---

[3]It is to be noted further that the evidence of petitioner's refusal was
received without objection at a formal hearing, which was requested by
him and wherein he was represented by counsel.

In *People* v. *Sudduth, supra,* it was held (p. 546) that suspects have no constitutional right to refuse a breathalyzer test "whether or not counsel is present" (citing *People* v. *Gilbert,* 63 Cal.2d 690, 709 [47 Cal.Rptr. 909, 408 P.2d 365]). On certiorari re the cited *Gilbert* case, it was held in *Gilbert* v. *California, supra,* (388 U.S. 263), that under the circumstances in that case (where Gilbert had been indicted and had counsel and was placed in a lineup 16 days after the indictment) the petitioner had a right to have counsel present at the lineup, and that evidence relating to identification of petitioner was tainted by the illegal lineup. It was also noted therein that at the trial the petitioner objected to the introduction of evidence relating to the lineup. It was also held therein that the petitioner was not entitled to counsel when handwriting exemplars were taken (prior to indictment).[4]

The case of *People* v. *Ellis,* 65 Cal.2d 529 [55 Cal.Rptr. 385, 421 P.2d 393], which was a criminal case decided on the same day the *Sudduth* case was decided, is distinguishable from the present case.[5]

In civil proceedings concerning the suspension of a person's driving privilege, it has been held, in other states which have implied consent laws similar to section 13353 of the California Vehicle Code, that such person does not have a right to counsel when he is requested to submit to a required test. (See

[4]In *United States* v. *Wade, supra,* 388 U.S. 218, it was held that an accused has a right to have counsel present at a lineup. It was also held that he does not have a right to have counsel present at analyses of his fingertips, blood sample, clothing, and hair.

[5]In the *Ellis* case the trial court received evidence that defendant refused to submit to a voice-identification test. Prior to the time he was asked whether he would submit to the test, he was advised of his right to counsel and of his right to remain silent. He "refused to cooperate and remained silent." It was held therein that voice-identification tests are not protected by the privilege against self-incrimination, and it was also said that since defendant had been advised that he had a right to remain silent and such warning advice did not distinguish between speech in terms of conversation and speech for voice identification, "defendant's refusal to speak might well have been the direct result of the police warning and cannot be used against him." In the present case, where evidence of petitioner's refusal to submit to tests was received in a civil proceeding, the officer advised petitioner that he had a right to remain silent, and the officer also gave him detailed advice concerning the requirements of the Vehicle Code that he submit to one of the tests. Petitioner herein did not remain silent and, after indicating that he would take the breathalyzer test, refused to cooperate when the test was administered. It could be reasonably inferred, in the present case, that petitioner's refusal to submit to the test was not a direct result of the warning to remain silent, but that his refusal was made because "he knew the nature of the test, and what it was designed to show." (See *People* v. *Conterno,* 170 Cal.App.2d Supp. 817, 835 [339 P.2d 968].)

*Finocchario* v. *Kelly,* 11 N.Y.2d 58 [181 N.E.2d 427]; *Gottschalk* v. *Sueppel,* 258 Iowa 1173 [140 N.W.2d 866].)

In the present civil proceeding relating to the suspension of petitioner's driving privilege, there was a formal hearing at which petitioner was represented by counsel, and no objection was made to the introduction of evidence of petitioner's refusal to take the test. The refusal was made shortly after the arrest and prior to the filing of any charges against him. There is no merit to appellant's contention regarding the absence of counsel when he was called upon to decide whether to take the test.

Appellant also contends that he was denied due process of law in that the judicial function of determining reasonable cause for his arrest was delegated (by Veh. Code, § 13353) to the department. He argues that California law is replete with cases since *People* v. *Cahan* (44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]), wherein courts have reviewed the facts surrounding the arrest to determine the issue of reasonable cause, and that such determination is therefore ''a judicial function which due process of law requires be exercised by a court and not by administrative bodies.''

As previously stated, section 13353 of the Vehicle Code provides that the test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor.[6] Said section also provides that the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle while under the influence of intoxicating liquor and that the person refused to submit to the test, shall suspend his driving privilege for six months. The Legislature has also provided for an informal hearing (Veh. Code, § 14104) or a formal hearing (Veh. Code, § 14107) with reference to suspension of the driving privilege, and has provided for the presentation of evidence (Veh. Code, § 14108) and for findings by the referee (Veh. Code, § 14109) at the formal hearing. ''While the Legislature cannot delegate the power to make a law, it is established beyond dispute that it may delegate to an administrative agency the authority to determine the facts upon which the law makes its own action depend, or upon which the enactment becomes operative.'' (2 Cal.Jur.2d, Administrative

---

[6]Similar provisions with reference to reasonable cause are included in implied consent laws in other states.

Law, p. 118, § 55.) It thus appears that the Legislature has authorized the referee at a formal hearing to make findings of fact on the issues presented under section 13353, and that the referee's finding regarding reasonable cause included a determination of facts upon which the operation of the section depended. The delegation of power to the department to make findings of fact pertinent to the issues under section 13353 did not deny petitioner due process of law. (See *Escobedo* v. *State of California,* 35 Cal.2d 870, 877 [222 P.2d 1].) Furthermore, the action by the department was subject to review, and was reviewed, by the superior court (Code Civ. Proc., § 1094.5), which found that all of the department's findings were supported by the evidence. (See *Hohreiler* v. *Garrison,* 81 Cal. App.2d 384, 401-402 [184 P.2d 323].)

Appellant further contends that he was denied a fair hearing before an impartial tribunal. He argues that the department acted as ''both the accuser and the judge.'' A similar contention was rejected in *Hohreiter* v. *Garrison, supra,* pp. 392-393. No purpose would be served by a further review of the administrative procedures which the Legislature has prescribed (discussed in part above). Such procedures make ample provision for a fair trial before an impartial tribunal, and a review of the record herein shows that petitioner was afforded a fair trial before an impartial tribunal.

Appellant further contends that the findings (by department and by superior court) are not supported by substantial evidence, particularly the findings (1) that the officer had reasonable cause to believe petitioner had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor, (2) that petitioner was told that his driving privilege would be suspended for six months if he refused to submit to a chemical test, and (3) that petitioner refused to submit to any chemical test after having been requested to do so.

Prior to arresting petitioner, the officer saw petitioner drive an automobile which stopped at an intersection where the traffic signal was red, proceeded about five feet into the intersection while the signal was red, stopped again, remained stopped approximately 10 seconds after the light changed to green, then ''took off suddenly'' and weaved back and forth from lane to lane. The officer, after causing the driver to stop the automobile, and prior to arresting petitioner, noticed that there was a strong odor of alcohol on petitioner's breath, and the officer observed that petitioner failed ''a simple balance

test." There was substantial evidence to support the finding with reference to reasonable cause.

■ There is also substantial evidence to support the finding that petitioner was told that his driving privilege would be suspended if he refused to submit to a chemical test. There was evidence that the officer read to petitioner a statement to the effect that he was requested to submit to a chemical test to determine the alcoholic content of his blood, that he had a choice whether the test would be of his blood, breath, or urine, and that his refusal to take a test would result in suspension of his driving privilege for six months. There was also evidence that the officer told him that the Department of Motor Vehicles required that he submit to one of the three tests.

■ With reference to the finding that defendant refused to take the test, appellant asserts that there was evidence that he "conditionally consented" to take the test if his attorney or a doctor was present. There was evidence herein that after petitioner had been told that his driving privilege would be suspended if he did not take the test, he said that he would take it. After the breathalyzer test was explained to him, he placed the mouthpiece in his mouth, but he refused to blow into it. He was given four or five opportunities to blow into the mouthpiece, and refused each time to blow. He was then asked to sign a statement that he refused to take any test, and he refused to sign it. It has been held, in proceedings to suspend driving privileges pursuant to implied consent laws similar to section 13353 of the Vehicle Code, that a driver, when requested to take the required tests, cannot impose a condition that a doctor of his choice be present during the tests. (See *Beare* v. *Smith, supra; Breslin* v. *Hulis,* 20 App. Div.2d 790 [248 N.Y.S.2d 70].) The evidence supports the finding that petitioner refused to take the test.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 31, 1968. Peters, J., was of the opinion that the petition should be granted.