74 Cal.Rptr. 363]

[Civ. No. 8998.   Fourth Dist., Div. Two.   Oct. 24, 1968.]

EDWIN PARKER WESTMORELAND, Plaintiff and Appellant, v. JAMES W. CHAPMAN, JR., as Director of the Department of Motor Vehicles, Defendant and Respondent.

(1)

Richman, Garrett & Ansell, Richman & Garrett and Lionel Richman for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Clifford L. Schaffer, Deputy Attorney General, for Defendant and Respondent.

KERRIGAN, J.—On March 3, 1967, at approximately 2:45 a.m., petitioner was arrested on a charge of operating a motor vehicle on a public highway while under the influence of intoxicating liquor. Immediately prior to the arrest, two California Highway Patrol officers observed petitioner driving

erratically. His car was weaving and crossed the center line of the roadway on several occasions. After being stopped, the officers noticed that petitioner was wearing dark glasses, notwithstanding the early morning hour. When he removed the glasses, his eyes appeared to be extremely red. The odor of alcohol was detectable. Petitioner's speech was slurred and thick, and he had difficulty standing. He wavered back and forth and finally leaned against his car for support. The officer advised petitioner that he was suspected of driving under the influence, that he had a right to remain silent, and that anything he said could be used against him in a court of law. He was further informed that he had a right to an attorney, and that if he could not afford counsel, one would be appointed by the court. Petitioner indicated he understood his rights. Simple balance tests were administered, and he failed the same. He was then placed under arrest.

The officer requested petitioner to submit to a chemical test to determine the alcohol content in his blood, and informed him he had a choice of three tests—blood, breath or urine—and that failure to submit to any of the tests would result in his driver's license being suspended for a period of six months. Petitioner refused to take any of the tests and stated that he wanted to talk to his attorney.

While en route to the Riverside jail, the arresting officer advised petitioner again to the effect that the test was important and that his refusal to submit would result in the loss of his driver's license whether he was convicted or not. Petitioner then agreed that if a doctor was sent to the jail, he would take a blood test. The officer replied that a technician would come to the jail for the purpose of conducting the blood test at the county's expense.

At 3:45 a.m., a laboratory technician appeared at the jail for the purpose of rendering a blood test. Petitioner refused to allow the test and became vulgar in his speech. The arresting officer again advised petitioner of the provisions of the implied consent law, and petitioner once again agreed to take the test. However, as the Riverside analyst approached petitioner, the latter inquired as to whether he was a medical doctor and, when informed he was a technician, petitioner stated that his own doctor would have to be present to administer the blood test. The officer then informed petitioner that other tests were available, but petitioner again refused to take any type of test.

The arresting officer filed a written statement with the

department reflecting that petitioner refused to take a chemical test. (Veh. Code, § 13353, subd. (b).) The department served petitioner with an order of suspension, and he demanded a formal hearing, at which he was present and represented by counsel. The departmental hearing officer made findings to the following effect: petitioner had been arrested; the arresting officer had reasonable cause to believe that he had been driving a motor vehicle on a public highway while under the influence; he had been requested to submit to a chemical test and informed his driving privilege would be suspended if he refused; and he refused the test.

The director reviewed the findings and affirmed the order of suspension.

The petitioner then filed a petition for an alternative writ of mandate in the superior court, and the same was granted. Subsequently, a hearing was held in the trial forum and the alternative writ was discharged and the peremptory writ denied.

Petitioner raises the following issues in his attack on the judgment: (1) The chemical tests prescribed by the California Implied Consent Law are violative of his right against self-incrimination and his right to counsel; (2) he was denied his absolute right of having his own doctor administer the chemical test; (3) the implied consent law constitutes a Bill of Attainder; (4) insufficiency of the evidence to support the department's and the trial court's findings and conclusions to the effect that he was properly advised in conformity with the provisions of the code; (5) insufficiency of the evidence to support the department's and trial court's determination that he refused to take one of the chemical tests prescribed by the statute.

It is now settled that in a civil proceeding for suspension of a person's driving privilege under the California Implied Consent Law, a driver does not enjoy the right to consult with counsel, or to have counsel present, before deciding to submit to the chemical tests prescribed by the statute inasmuch as such tests do not violate one's right against self-incrimination (*Schmerber* v. *California*, 384 U.S. 757, 760-765 [16 L.Ed.2d 908, 913-916, 86 S.Ct. 1826]; *People* v. *Sudduth*, 65 Cal.2d 543, 546-547 [55 Cal.Rptr. 393, 421 P.2d 401]; *United States* v. *Wade*, 388 U.S. 218, 221 [18 L.Ed.2d 1149, 1153, 87 S.Ct. 1926]), nor one's right to be free from illegal searches and seizures (*Schmerber* v. *California, supra,* pp. 766-772 [16 L.Ed.2d pp. 917-920]), nor one's right to counsel.

(*Finley* v. *Orr*, 262 Cal.App.2d 656, 663-664 [69 Cal.Rptr. 137].)

▉ Petitioner next maintains that his request to have his own doctor administer the test was refused. However, authority likewise exists that a licensee under the provisions of section 13353, subdivision (b) of the Vehicle Code may not qualify his consent to submit to a test by a condition that the test be administered by, or in the presence of, his own physician inasmuch as such a qualified consent amounts to a refusal to take the test provided by the section. (*Fallis* v. *Department of Motor Vehicles*, 264 Cal.App.2d 373, 382 [70 Cal.Rptr. 595].) However, the right to have an *additional* test made by one's own physician is assured by the statute. (Veh. Code, § 13354.)

▉ Petitioner's next contention that section 13353 constitutes a bill of attainder is difficult to comprehend. A bill of attainder is a legislative act which inflicts punishment upon a designated person, or easily ascertainable members of a group, for an alleged crime without a trial. (*United States* v. *Lovett*, 328 U.S. 303, 315 [90 L.Ed. 1252, 1259, 66 S.Ct. 1073, 1078]; *Department of Social Welfare* v. *Gardiner*, 94 Cal.App.2d 431, 432-433 [210 P.2d 855]; *Communist Party of U.S.* v. *Subversive Activituss Control Board*, 367 U.S. 1 [6 L.Ed.2d 625, 81 S.Ct. 1357].) Under the foregoing definition, it is obvious that the implied consent law does not constitute a bill of attainder. The law does not apply to a certain individual nor to a narrowly defined group, but to *all* licensed drivers. Secondly, the suspension of a license is civil in nature, and does not constitute punishment for a crime. Finally, the suspension proceedings are protected with administrative and judicial safeguards. ▉ The licensee is entitled to a hearing before the department (Veh. Code, § 13353); the department's hearing procedures are defined in the code (Veh. Code, §§ 14100-14112); a referee or hearing board merely makes findings and submits recommendations (Veh. Code, § 14109); the decision-making power may not be delegated, but the director must review the record, evidence and findings and eventually render his decision. (Veh. Code, §§ 14110-14111.) Moreover, as is apparent in this case, mandamus is available. The foregoing procedures comply with due process. (*Serenko* v. *Bright*, 263 Cal.App.2d 682, 691-692 [70 Cal.Rptr. 1].)

▉ It is next contended that petitioner was not advised that a licensed technician was authorized by the statute to take a blood specimen from him. However, the statute expressly

authorizes a licensed clinical laboratory technologist or technician to administer the blood test for the purpose of determining the alcoholic content of the blood (Veh. Code, § 13354, subd. (a)), but it does not impose upon the arresting officer any duty to so advise the arrestee. Although petitioner testified that during World War II a pharmacist's mate injected a needle in his arm and that it broke, and that since the war he has been allergic to having anyone administer such a test, the record indicates that he was informed that he had an option to choose any one of three chemical tests. In the event the blood test was repugnant, petitioner could have insisted upon either the breathalyzer or urine tests.

In conclusion, petitioner urges that the evidence is insufficient to support the finding that he refused to take a test. Immediately after being placed under arrest, petitioner was advised of the tests and informed that his license would be suspended if he refused to take one of the three. He refused. Then the officer inquired again if he would take one of the tests, and named each of the tests. Petitioner refused. Ten-fifteen minutes later, petitioner was again informed that the test was important. He then agreed to take a blood test, but when the technician appeared at the jail, he again refused to permit the blood sample to be taken. Following another advisement that his license would be suspended, petitioner agreed to take the blood test, but as the technician approached him, he refused to permit the needle to be inserted because the technicain was not an M.D. When the arresting officer then informed him that other tests were available, he still refused to consent. The record thus contains substantial evidence to support the trial court's finding of refusal to consent.

Judgment denying writ affirmed.

McCabe, P. J., and Tamura, J., concurred.