471 P.2d 66

Warner C. MILLS, Commissioner of Law Enforcement, State of Idaho, Plaintiff-Respondent,

v.

Marie BRIDGES, Defendant-Appellant.

No. 10441.

Supreme Court of Idaho.

July 1, 1970.

Lloyd J. Walker, Twin Falls, for defendant-appellant.

Robert M. Robson, Atty. Gen., and Martin R. Ward, Asst. Atty. Gen., Boise, for plaintiff-respondent.

McFADDEN, Chief Justice.

This appeal arises out of an order of the respondent commissioner of law enforcement suspending the appellant's driver's license for ninety days, pursuant to I.C. § 67–5215. Appellant petitioned the district court to review this order, and following the review by the district court, judgment was entered affirming the commissioner's order. It is from the district court judgment that this appeal was taken.

The record submitted to the trial court was a transcript of the testimony taken before a hearing examiner of the department of law enforcement. The hearing examiner merely certified the record without findings of fact, or recommendatory conclusions of law or order. The commissioner, on the basis of this record, entered his findings of fact, conclusions of law and order. The same record was submitted to the trial court and also to this court.[1]

The following facts appear from the record. Shortly after midnight on the morning of July 2, 1967, officer Plott of the Idaho State Police investigated an accident involving two automobiles about four miles south of Ketchum, Idaho. He observed that Marie Bridges, the appellant herein and the driver of one of the vehicles involved in the accident, was somewhat unsteady on her feet and that as she walked from her vehicle to the police car she was weaving and staggering. Plott stated that he noticed the odor of alcohol on her breath and that upon inquiry she advised him that she had been drinking and that she had had one beer and two vodkas. Officer Plott requested her to walk along the white line on the highway. She consented to this test, but did not perform it to the satisfaction of the officer, who placed her under arrest for operating a motor vehicle while under the influence of intoxicants.

Following the arrest officer Plott read the "Miranda warnings" to appellant, advising her of her right to counsel and right to remain silent. Shortly afterward, at 1:00 a. m., while still at the scene of the accident, he requested that she submit to a breath test to determine the amount of alcohol in her blood. The appellant stated that she would not consent to the test until she talked to one person, later identified as her attorney. Officer Plott read to appellant the provisions of I.C. § 49–352 concerning the taking of chemical tests of the blood, breath, urine or saliva of the operator of a motor vehicle. She was advised that she would have an opportunity to call her attorney when they arrived at the sheriff's office. The local sheriff was present during this time.

The appellant and the officers arrived at the sheriff's office sometime after 1:00 a. m. and the appellant made several efforts by phone to contact the individual whom she wished to consult. A matron was called to be with the appellant, and while the matron was there, the officer stated that to his recollection he again asked the appellant to take a test, which appellant again refused. Appellant was able to contact her attorney by phone.

The appellant testified that she had first refused to take a breath test until she had talked to her attorney and that she did not think they got to the sheriff's office much before 1:30 a. m. After she reached her attorney by phone and discussed the problem with him, she asked officer Plott what kind of chemical test was to be taken, and she stated that the officer then replied that it did not matter "because you've already refused to take the test * * *." Appel-

---

1. The trial court, very appropriately, in its memorandum opinion observed:

"At the outset I should point out that the 'record' before me is more likely to lead us to error than to justice. It is quite obvious that many segments of testimony elicited at the hearing remain in the hearing room and have never found their way into the official transcript.

I do not know who is responsible for this shortcoming, but in fairness to the reviewing Courts, as well as the administrative officers and others taking part in the original proceedings, this defect should be corrected if future reviews such as this are to perform any worthwhile functions."

lant testified that this took place about 2:00 a. m.

On the basis of the record the commissioner of law enforcement entered the following finding of fact:

"Pursuant to Section 49–352, Idaho code, you [appellant] have refused to submit to a chemical test to determine the alcoholic content of the blood."

By stipulation of the parties filed in the district court, it was agreed:

"That the only area of controversy between the parties is that part of the record dealing with Petitioner's [appellant's] alleged refusal to submit to a chemical test, that part which shows that Petitioner requested that she be allowed to consult her attorney prior to either taking the test or refusing.

"Further that since the controversy is limited as mentioned above, that with permission of the court, the review be limited to that point."

The record contains no findings of fact by the hearing examiner. The only finding of fact is that quoted above, entered by the commissioner of law enforcement, who neither saw nor heard the witnesses testify. The commissioner was in no better position to assess the witnesses' credibility or to determine the weight to be given such testimony or to resolve conflicting evidence than was the district court, or indeed is this court, upon a review of the record. Findings of fact are a crucial part of the record. As Professor Davis points out in his treatise on Administrative Law,

"The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearing and judicial review, and keeping agencies within their jurisdiction." 2

Davis, Administrative Law § 16.05, p. 444.

I.C. § 67–5209 of the Administrative Procedure Act requires the administrative agency to make findings of fact in a contested case. Here there is no finding as to the time officer Plott first requested appellant to submit to a chemical test, or when appellant first refused the test. Neither is there any finding as to the time appellant first was able to contact her attorney and inquired of officer Plott as to the kind of test he wanted her to take. Nonetheless, the record is not disputed and reflects without contradiction that officer Plott requested appellant to submit to the test at 1:00 a. m., and from appellant's testimony it appears that she contacted her attorney at 2:00 a. m., or just shortly before.

Appellant argues that she did not refuse to submit to the requested test within the meaning of I.C. § 49–352. She asserts that she qualified or conditioned her refusal by a request to consult first with her attorney. Her position is basically that unless there is an express, unequivocal and unconditional refusal to submit to the test, there is no refusal within the meaning of the statute. Although this court held in Mills v. Swanson, 93 Idaho 279, 460 P.2d 704 (1969), that the refusal must be express in the sense that it cannot be left to inference whether defendant has consented or refused, here there is no doubt but that appellant was refusing to take the breath test. The issue is whether the qualification or condition that she first consult with her attorney justified the refusal. It is our conclusion that it did not.

It has been quite uniformly held by the courts which have considered the issue that a qualified or conditional refusal to take a test to determine the level of blood alcohol is a refusal within the meaning of statutes similar to ours. A defendant cannot condition his consent to the test upon the presence of counsel. Westmoreland v. Chapman, 74 Cal.Rptr. 363 (Cal. App.1968). Cf. Finley v. Orr, 262 Cal. App 2d 656, 69 Cal.Rptr. 137 (1968).

Appellant asserts that this court's decision in Mills v. Swanson, supra, stands for the proposition that anything less than unequivocal and unconditional refusal is not a refusal. However, in that case the defendant, who was injured and in a dazed state, failed to respond to the officer's request to take the test, and no test was administered. This court held that under those facts there was no refusal to submit to the test to determine the alcohol content of the blood. The facts in that case distinguish it from the instant case in which there was a refusal to take the test until after consultation by appellant with her attorney.

Appellant further contends that she was entitled to condition her refusal upon consultation with her attorney because she had a constitutional right to the advice of counsel and could not be forced to decide whether to submit to the test until given an opportunity to exercise this right. She further asserts that when after consulting with counsel, she asked officer Plott what kind of test he wanted her to take and he replied that it did not matter "because you've already refused to take the test * * *," any opportunity for her to change her mind and submit to the test was withdrawn by the officer, and thus she was in effect denied the assistance of counsel.

■ In support of her contention that she was entitled to the assistance of counsel at this stage of the proceedings, appellant relies upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Appellant, however, overlooks the fact that these cases involved the right to counsel in criminal prosecutions. The present case, however, is not such a prosecution, but rather is a civil proceeding involving the suspension of a driver's license. The weight of authority is to the effect that because an administrative proceeding for the suspension of a driver's license is a civil proceeding, and not a criminal prosecution, a defendant does not have a constitutional right to consult with an attorney before deciding whether to accede to an officer's request to submit to a blood test. See Finnocchairo v. Kelly, 11 N.Y.2d 58, 226 N.Y. S.2d 403, 181 N.E.2d 427 (1962); David v. Strelecki, 51 N.J. 563, 242 A.2d 371 (1968); Gottschalk v. Sueppel, 258 Iowa 1173, 140 N.W.2d 866 (1966); Severson v. Sueppel, 152 N.W.2d 281 (Iowa 1967); Blydenburg v. David, 413 S.W.2d 284 (Mo.1967); Finley v. Orr, supra; Westmoreland v. Chapman, supra.

Since the amount of alcohol in a person's bloodstream diminishes with the lapse of time it is apparent that in many instances to allow a person to contact an attorney, or in the case of an indigent, to appoint an attorney for him, would often take so much time as to render the test useless.[2] Under the regulations of the department of law enforcement, after a person has been requested to take a test to determine the alcohol content of his blood, if he first refuses, he has a period of one hour to change his mind and submit to the test.

In the instant case, the appellant first refused to take the test and never thereafter affirmatively indicated any change of mind and willingness to submit. She now asserts, however, that because officer Plott

2. Rule of Department of Law Enforcement concerning chemical test of operator:
  "2 The amount of time permitted a person to either refuse or submit to a chemical test is of importance. An hour's time is considered to be sufficient time for a person to decide whether or not to submit to a chemical test. In this matter the following rules will be followed:
    (a) * * *
    (b) * * *
    (c) If a licensee indicates refusal to submit to a chemical test and then decides to submit within a one hour period of time the chemical test will be given.
    (d) For the purpose of this regulation, the hour's period of time will be considered as beginning at the time the licensee is first requested to submit to a chemical test of his blood, breath, urine or saliva."

withdrew the right to take the test, prior to the expiration of a full hour of time, she should now be exonerated from her first refusal. With this contention we disagree. In the first place, the record is not clear as to what transpired during the appellant's phone call to her counsel. Plott does not recall any conversation between himself and appellant while she was speaking over the phone with her counsel. Appellant, however, testified that during this telephone call the following transpired:

> "You [appellant's counsel] asked me [appellant] to ask him what kind of test he wanted me to take and I turned around and ask him and he said it doesn't make any difference because you've already refused to take the test and that's just how he answered just real smart and honery [sic]."

Appellant admitted, however, that following this conversation with her counsel she did not later request to take the test.

■ It is our conclusion that at the time of the telephone call by appellant, her initial refusal to take the blood test was still effective. Whether a full hour had elapsed between officer Plott's first request, which was refused, and the phone call is problematical from the record. The contention that the withdrawal by Plott of the right to take the blood test came within the one hour time period comes by way of an affirmative defense on the part of appellant, and under such circumstances, the burden of proof on this issue rested on her, especially since she never offered to take the test. Under this state of the record, a prima facie case was established justifying the suspension order, and the appellant had the burden of coming forth with proof of her contention that the right to take the test had been withdrawn within the hour. The record indicates that appellant failed to establish this contention by a preponderance of the evidence. 2 Am.Jur. 2d Administrative Law, § 391, p. 198; Cole-

Collister Fire Protection Dist. v. City of Boise, 93 Idaho 558, 468 P.2d 290 (1970). The judgment of the trial court is affirmed. Costs to respondent.

DONALDSON, SHEPARD and SPEAR, JJ., concur.

McQUADE, Justice (concurring specially).

In concurring with the majority I would like to emphasize that there is no magic in the one-hour period of time in which the blood alcohol test may be made. It is designed primarily to effectively calculate the greatest amount of alcohol in the bloodstream for prosecution of a criminal offense. However, it is my opinion that at anytime after the one-hour period a motorist may still consent to take the test and the officer must comply with such request.

In advising a motorist of his right to counsel the officer is complying with the constitutional rights of a motorist in regards to criminal action which may be pressed against such motorist. To effectively implement *Miranda* warnings[1] the officer must make available means by which a driver can contact an attorney for the purpose of obtaining information and advice with regard to his legal rights including those relating to a blood alcohol test. The attorney may inform the driver to take the blood alcohol test as a means to positively establish the blood alcohol content. Although such request by a citizen may be subsequent to the one-hour period such test may be used on behalf of the defendant or the State in the event criminal prosecution is maintained. *See* I.C. § 19–1309(1) (b). The lapse of time would relate to the weight of the evidence. Admissibility of such test results would depend, as any other evidence, on its relevancy. This evidence, albeit executively tardy by the Department of Law Enforcement standards, may be of value to both the prosecution and the defense.

1. Miranda v. Arizona, 384 U.S. 436, at 478–479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).