[No. B230745. Second Dist., Div. One. July 22, 2011.]

THE PEOPLE, Petitioner, v.
THE APPELLATE DIVISION OF THE SUPERIOR COURT OF LOS
ANGELES COUNTY, Respondent;
WORLD WIDE RUSH, LLC, et al., Real Parties in Interest.

#### COUNSEL

Carmen A. Trutanich, City Attorney, Debbie Lew, Assistant City Attorney, and Katharine H. MacKenzie, Deputy City Attorney, for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest World Wide Rush, LLC.

Mayer Brown, Bronwyn F. Pollock, Barrett L. Schreiner and Lee H. Rubin for Real Parties in Interest SMIII Sepulveda Center, LLC, and VDA Property Company, LLC.

No appearance for Real Party in Interest MD Graphics Installers, Inc.

#### OPINION

**MALLANO, P. J.**—During pretrial proceedings in a misdemeanor case, the trial court held that the criminal discovery statutes (Pen. Code, § 1054 et seq.) precluded the prosecutor from obtaining production of various corporate records pertaining to corporate structure and operations from the corporate defendants. We conclude that the criminal discovery statutes do not bar production of the records, which constitute a category of nontestimonial evidence that Penal Code section 1054.4 and established precedent permit the prosecutor to obtain. Accordingly, we grant the prosecutor's petition for a writ of mandate.

## BACKGROUND

In a complaint filed June 7, 2010, real parties in interest World Wide Rush, LLC (WWR); SMIII Sepulveda Center, LLC (SMIII); VDA Property Company, LLC (VDA); and MD Graphic Installers, Inc. (real parties in interest), were charged with violating Los Angeles Municipal Code section 57.12.02, Business and Professions Code sections 5405 and 5440, and Los Angeles Municipal Code section 14.4.4, subdivision B.9 (charged against VDA only) by placing "supergraphic" advertising signs on two buildings in Los Angeles (*People v. World Wide Rush, LLC* (Super. Ct. L.A. County, 2010, No. 0CA01190)). Real parties in interest pleaded not guilty.

On October 7, 2010, the prosecutor filed a motion for corporate discovery, seeking an order requiring the custodian of records for each of the real party in interest corporate defendants to produce for inspection and copying the following categories of documents: those "pertaining to articles of incorporation, statement of officers, statement of information, and fictitious name filings" filed by real parties in interest; those reflecting "the ownership, management or control of" real parties in interest; those "regarding or relating to discussions, negotiations, agreements, offers, contracts and all other communications and commercial transaction records, whether or not consummated, regarding or relating to" specifically described supergraphic signs; those "describing, regarding, referring to or relating to any consideration . . . paid or received" by real parties in interest for specifically described supergraphic signs; and those "relating to any communications, notices of violations, complaints or inquiries received by" real parties in interest from any government agency since April 1, 2009, along with documents "relating to responses" to such communications, notices, complaints, or inquiries.

Each of the real parties in interest opposed the prosecutor's motion on the ground that both the prosecutor's motion and the discovery it sought fell outside the scope of the criminal discovery statutes and were thus improper. They also contended that the document requests should be evaluated in the course of the civil action filed against them by the city, rather than the criminal case. The trial court agreed that the motion sought discovery not permitted by the discovery statutes and denied the motion.

On December 15, 2010, the prosecutor filed a petition for a writ of mandate in the Appellate Division of Los Angeles Superior Court. Real parties SMIII and VDA filed a brief opposing the petition. The appellate division summarily denied the petition on January 10, 2011.

The prosecutor then filed a motion for leave to serve subpoenas duces tecum on corporate defendants. The subpoenas attached to the motion sought production in court of the same categories of documents sought in the discovery motion. SMIII and VDA opposed the motion, relying again on the exclusivity of the criminal discovery statutes and the possibility of obtaining the documents in the civil action. They also argued that under Penal Code section 1326, subpoenas duces tecum could not be used against a party. (Undesignated statutory references are to the Penal Code.) WWR joined in the opposition. The trial court denied this motion, as well. It rejected the proposition that discovery should be limited to the civil action, but agreed that section 1326 was inapplicable to a party and that the motion sought discovery beyond that permitted by the criminal discovery statutes.

On February 8, 2011, the prosecutor filed a petition for a writ of mandate in this court. SMIII and VDA filed preliminary opposition. On March 3, 2011, we ordered the superior court to show cause why a peremptory writ should not issue. Real parties in interest SMIII and VDA filed a return, to which the prosecutor replied.

## DISCUSSION

The prosecutor contends that he is entitled to production of the corporate records in issue pursuant to section 1054.4 and *People v. Superior Court (Keuffel & Esser Co.)* (1986) 181 Cal.App.3d 785 [227 Cal.Rptr. 13] (*Keuffel*). We agree because the criminal discovery statutes do not bar production of the records, which constitute a category of nontestimonial evidence that Penal Code section 1054.4 and established precedent permit the prosecutor to obtain. Accordingly, we grant the prosecutor's petition for a writ of mandate.

█ Up until the passage of Proposition 115 in 1990, a number of decisions by the California Supreme Court interpreted the state constitutional privilege against self-incrimination as a "roadblock to prosecutorial discovery." (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 371 [285 Cal.Rptr. 231, 815 P.2d 304] (*Izazaga*); see *People v. Collie* (1981) 30 Cal.3d 43, 50–51 [177 Cal.Rptr. 458, 634 P.2d 534] (*Collie*).) In *Collie*, the court disapproved not only the discovery order in issue, but "all other judicial attempts to frame prosecutorial discovery orders" and declined "to articulate a unitary principle on which discovery by the People can be based." (30 Cal.3d at p. 55.) The court nevertheless expressly left "intact the firmly established precedents that hold the self-incrimination privilege inapplicable to, and allow mandatory production of, nontestimonial evidence such as fingerprints, blood samples, breath samples, appearances in lineups, and handwriting and voice exemplars." (*Id.* at p. 55, fn. 7.)

In *Keuffel, supra,* 181 Cal.App.3d 785, the corporate defendant was charged with a misdemeanor violation of an ordinance regulating the discharge of chemicals into the sewers. The prosecutor "filed a discovery motion seeking corporate records and other information relating to defendant's manufacturing process and methods of disposing of chemical waste materials during that process." (*Id.* at p. 787.) The municipal court granted the motion after limiting the scope of discovery to nonprivileged documents that were relevant to the issues involved in the case. (*Id.* at p. 787, fn. 1.) The superior court granted the defendant's petition for a writ of prohibition, citing *Collie, supra,* 30 Cal.3d 43. Division Five of this district reversed, observing that although the prosecutorial discovery restrictions in *Collie* were founded upon the individual defendant's Fifth Amendment privilege against self-incrimination, *Collie* expressly preserved the prosecutor's entitlement to the production of nontestimonial evidence. (*Keuffel,* at p. 788.) Because corporations do not have a privilege against self-incrimination, Division Five concluded that the corporate defendant's records were not protected by the privilege against self-incrimination, and treated them as equivalent to the nontestimonial evidence referred to in *Collie.* Thus, the municipal court properly ordered their production. (*Keuffel,* at p. 788.)

Proposition 115, approved on June 5, 1990, a little over four years after *Keuffel, supra,* 181 Cal.App.3d 785, substantially revised the laws governing criminal discovery, as well as other aspects of criminal law and procedure. The proposition declared that "comprehensive reforms are needed in order to restore balance and fairness to our criminal justice system." (Ballot Pamp., Primary Elec. (June 5, 1990) text of Prop. 115, p. 33.) It decried statutes and California Supreme Court decisions that had "unnecessarily expanded the rights of accused criminals far beyond that which is required by the United States Constitution, thereby unnecessarily adding to the costs of criminal cases, and diverting the judicial process from its function as a quest for truth." (*Ibid.*)

With respect to discovery, Proposition 115 added the following provision to the state Constitution: "In order to provide for fair and speedy trials, discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the people through the initiative process." (Cal. Const., art. I, § 30, subd. (c).) Proposition 115 also added the criminal discovery statutes, commencing with section 1054, to the Penal Code. Section 1054 sets forth the purposes of the new discovery scheme: "This chapter shall be interpreted to give effect to all of the following purposes: [¶] (a) To promote the ascertainment of truth in trials by requiring timely pretrial discovery. [¶] (b) To save court time by requiring that discovery be conducted informally between and among the parties before judicial enforcement is requested. [¶] (c) To save court time in trial and avoid the necessity for frequent interruptions and postponements. [¶] (d) To protect victims and witnesses from

danger, harassment, and undue delay of the proceedings. [¶] (e) To provide that no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States."

Section 1054.1 sets forth the prosecutor's discovery obligations, while section 1054.3, subdivision (a) sets forth those of the defense: "The defendant and his or her attorney shall disclose to the prosecuting attorney: [¶] (1) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial. [¶] (2) Any real evidence which the defendant intends to offer in evidence at the trial."

■ Section 1054.4, upon which the prosecutor relies, provides that "[n]othing in this chapter shall be construed as limiting any law enforcement or prosecuting agency from obtaining nontestimonial evidence to the extent permitted by law on the effective date of this section." Although section 1054.4 does not define "nontestimonial," Division Seven of this district has concluded that, for purposes of section 1054.4, the element of compulsion distinguishes "testimonial" evidence from "nontestimonial" evidence. (*People v. Sanchez* (1994) 24 Cal.App.4th 1012, 1027 [30 Cal.Rptr.2d 111] (*Sanchez*).) Thus, "voluntarily created [corporate records] do not involve compelled testimony" and fall within the category of materials discoverable under section 1054.4. (*Sanchez*, at p. 1028.) In *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1110–1114 [77 Cal.Rptr.3d 287, 183 P.3d 1250], the California Supreme Court explored the meaning of "nontestimonial" in section 1054.4 by reference to the scope of protection afforded by the Fifth Amendment. The court declined to determine "whether the meaning of the term 'nontestimonial' as used in section 1054.4 is coextensive with the term's meaning for purposes of applying the Fifth Amendment constitutional privilege," but stated that "these [Fifth Amendment] cases provide a useful framework for interpreting the statute." (*Verdin*, at p. 1112.) ■ Using that framework and because corporations and other organizations are not protected by the Fifth Amendment (*United States v. White* (1944) 322 U.S. 694, 699 [88 L.Ed. 1542, 64 S.Ct. 1248]), we conclude that the corporate records sought here fall within the category of "nontestimonial evidence" discoverable under section 1054.4. Real parties in interest have not contended that the records sought by the prosecutor were not voluntarily created in the normal course of business, either by real parties in interest or a third party with whom real parties in interest were conducting business or corresponding.

 In sum, on the effective date of Proposition 115, June 6, 1990, corporate records were a category of "nontestimonial" evidence that the law permitted a prosecutor to obtain. (*Keuffel, supra*, 181 Cal.App.3d at p. 788; *Sanchez, supra*, 24 Cal.App.4th at p. 1028.)

Real parties in interest argue that section 1054.4 is limited to "forensic evidence" and that *Keuffel* was invalidated by Proposition 115.

 In construing a statute enacted by initiative, we attempt to determine the intent of the voters. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) In determining that intent, we first examine the words of the statute. (*Ibid.*) Where the language is unambiguous, the plain meaning controls, and we have no occasion to resort to principles of statutory construction or extrinsic sources. (*Ibid.*) The voters are "deemed to be aware of existing laws and judicial constructions in effect at the time" they pass an initiative. (*People v. Weidert* (1985) 39 Cal.3d 836, 844 [218 Cal.Rptr. 57, 705 P.2d 380].)

 Section 1054.4 does not refer to "forensic evidence," but instead preserves the prosecutor's right to obtain "nontestimonial evidence." The categorization used in *Collie, supra*, 30 Cal.3d at page 55, footnote 7, was "nontestimonial." None of the numerous cases cited in footnote 7 in *Collie* categorized the type of evidence that the prosecutor was entitled to obtain as "forensic," and all of the cited decisions were based upon a conclusion that obtaining the evidence in question did not violate the defendant's Fifth Amendment privilege against self-incrimination. (*United States v. Wade* (1967) 388 U.S. 218, 221–223 [18 L.Ed.2d 1149, 87 S.Ct. 1926] [lineup]; *Gilbert v. California* (1967) 388 U.S. 263, 266–267 [18 L.Ed.2d 1178, 87 S.Ct. 1951] [handwriting exemplar]; *Schmerber v. California* (1966) 384 U.S. 757, 760–765 [16 L.Ed.2d 908, 86 S.Ct. 1826] [blood sample]; *Holt v. United States* (1910) 218 U.S. 245, 252–253 [54 L.Ed. 1021, 31 S.Ct. 2] [modeling clothing]; *Cramer v. Tyars* (1979) 23 Cal.3d 131, 139 [151 Cal.Rptr. 653, 588 P.2d 793] [subject of commitment petition compelled to provide nonincriminatory testimony demonstrating mental impairment]; *People v. Williams* (1969) 71 Cal.2d 614, 624–625 [79 Cal.Rptr. 65, 456 P.2d 633] [fingerprint exemplar]; *People v. Ellis* (1966) 65 Cal.2d 529, 533–535 [55 Cal.Rptr. 385, 421 P.2d 393] [voice identification test]; *People v. Sudduth* (1966) 65 Cal.2d 543, 545–546 [55 Cal.Rptr. 393, 421 P.2d 401] [breath sample]; *People v. Haeussler* (1953) 41 Cal.2d 252, 256–258 [260 P.2d 8] [blood sample]; *Finley v. Orr* (1968) 262 Cal.App.2d 656, 660–663 [69 Cal.Rptr. 137] [blood, breath, or urine sample].)

Construing the phrase "nontestimonial evidence" as used in section 1054.4 to be limited to "forensic evidence" would not only contradict the plain wording of the statute and the law existing on its effective date, it would also be contrary to the voters' intent in enacting Proposition 115, which was "to remove the roadblock to prosecutorial discovery created by [the California Supreme Court's] interpretations of the state constitutional privilege against self-incrimination . . . ." (*Izazaga, supra,* 54 Cal.3d at p. 372.) Interpreting "nontestimonial evidence" in section 1054.4 to exclude corporate documents of a corporate defendant—a category of nontestimonial evidence that the law permitted a prosecutor to obtain on the effective date of Proposition 115— would erect a new roadblock to prosecutorial discovery, in direct contravention of the voters' intent.

Real parties in interest argue that Proposition 115 "plainly superseded" *Keuffel, supra,* 181 Cal.App.3d 785, because the municipal court in *Keuffel* denied the prosecutor's request for a list of the witnesses the defendant intended to call at trial, and section 1054.3 now places upon defendants an affirmative duty to disclose that information. This argument is unpersuasive. Neither the holding nor the rationale of *Keuffel* was based upon discoverability of trial witnesses. Section 1054.3's expansion of information that the defense must disclose in no way suggests abrogation of *Keuffel*'s ruling permitting the prosecutor to obtain corporate documents from a corporate defendant as a type of nontestimonial evidence, especially in light of section 1054.4's express preservation of the prosecutor's right to obtain "nontestimonial evidence to the extent permitted by law on the effective date of this section."

Real parties in interest also argue that requiring them to produce the records sought would be improper because section 1054, subdivision (e) provides that "no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States" and section 1054.3 does not require real parties in interest to disclose any corporate records that they do not intend to introduce at trial. This argument, which the trial court adopted, overlooks the status of section 1054.4 as an "express statutory provision[]" that provides for the prosecutor to obtain nontestimonial evidence, including corporate records.

■ In a similar vein, real parties in interest also argue that, pursuant to section 1054.3, "corporate records are 'real evidence,' and therefore discoverable only . . . if they are records that 'the defendant intends to offer in evidence at the trial.'" This argument misconstrues section 1054.3, which imposes upon a defendant a duty to disclose, but does not purport to limit the prosecutor's ability to obtain "real evidence" authorized by other statutes, such as section 1054.4.

Real parties in interest also argue that discovery of the corporate records cannot be allowed because defendants have no reciprocal right to obtain documents in the government's possession other than as provided in section 1054.1. Real parties in interest misunderstand the nature and purpose of reciprocity in the discovery statutes. The voters' intent in enacting the discovery statutes as part of Proposition 115 was not reciprocity, but the ascertainment of truth, conserving judicial resources, minimizing delays during trial, and protecting victims and witnesses from danger, harassment, and undue delay of proceedings. (§ 1054.) The reciprocity aspect of the discovery statutes was intended to increase the prosecution's ability to obtain discovery from the defense while providing a system that was sufficiently fair to defendants to conform with due process. (*Izazaga, supra*, 54 Cal.3d at pp. 371–374.) Due process has never been held to require precise equality or symmetry between the prosecutor's and the defendant's abilities and resources to obtain discovery or investigate. Instead, the due process reciprocity requirement is intended to avoid an unfair trial, especially unfair surprise to the defendant. (*Wardius v. Oregon* (1973) 412 U.S. 470, 476 [37 L.Ed.2d 82, 93 S.Ct. 2208].) Real parties in interest fail to suggest how producing their own corporate records, the contents of which they presumably know and can review at any time, would cause them any unfair surprise or otherwise render their trial unfair.

■ Finally, we note that real parties in interest's return denies that they are corporations. This is of no consequence to our analysis, as organizations of any sort, corporate or otherwise, as well as individuals acting as representatives of the organization, lack the privilege against self-incrimination. (*United States v. White, supra*, 322 U.S. at p. 699.) Accordingly, all references to "corporate" documents or records and "corporate defendants" are fully applicable to real parties in interest, whatever their organizational structure may be.

We do not reach the issue of whether service of subpoenas duces tecum is a permissible or preferable method of obtaining the records sought by the prosecution because that issue was not raised by the prosecutor's original motion for discovery that was the subject of the petition for a writ of mandate in the appellate division.

We also express no opinion on whether real parties in interest might properly seek to tailor the scope of discovery, as they did not attempt to do so in the trial court.

## DISPOSITION

The petition for a writ of mandate is granted. We direct the Appellate Division of the Superior Court of Los Angeles County to vacate its order denying the prosecutor's petition for a writ of mandate and issue a new and different order granting the same.

Rothschild, J., and Chaney, J., concurred.