Filed 2/8/21  P. v. Patterson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENZEL ALDEN PATTERSON,<br><br>    Defendant and Appellant. | C090235<br><br>(Super. Ct. No. 62-152591E) |

After a jury found defendant Denzel Alden Patterson guilty of robbing a jewelry store, the trial court imposed a sentence of 19 years in state prison, including a one-year enhancement for a prior prison term, and ordered defendant to pay $208,000 in victim restitution.  On appeal, defendant argues:  (1) the trial court abused its discretion by admitting evidence of an uncharged robbery; (2) his prior prison term enhancement must be stricken; and (3) the abstract of judgment must be amended to reflect joint and several restitution with defendant's codefendants.  Disagreeing with defendant's first claim, but agreeing with his two other claims, we will remand for resentencing.

1

BACKGROUND

Around 3:00 p.m. on May 22, 2017, five men entered a jewelry store in a shopping mall in Roseville.  They had masks over their faces, carried baseball bats in their gloved hands, and the hoods were up on the hooded sweatshirts they wore.  After using their bats to break a display case, the men removed approximately 53 Rolex watches and left the mall in a black sport utility vehicle (SUV).

Pursuing law enforcement officers observed individuals exiting the SUV at several locations within the vicinity of an apartment complex in Sacramento County.

Around 4:00 p.m., officers entered an apartment in the complex, and found five men inside, including defendant.  Most of the men were breathing heavily and sweating as if they had just been exercising.

The black SUV getaway vehicle was found nearby, and a records check showed it was registered to a car rental company.  Among the items found inside the vehicle were baseball bats, Rolex watches, gloves, at least one mask, and a vehicle rental agreement indicating that one of the five men found in the apartment had rented the vehicle on May 18, 2017.

Defendant's DNA was located around the nose and mouth of a mask found on the rear passenger seat floorboard of the SUV.

Also on the rear passenger floorboard under the mask was a business card for a jewelry store in Gilroy, California, that had been robbed three days earlier (May 19).  In that robbery, two men wearing hooded sweatshirts with the hoods up entered the store during business hours, broke a display case with baseball bats, removed multiple watches, and left the scene in a black SUV.  Witnesses to the May 19 robbery reported that at least one of the two men wore a mask, and one man had what a witness believed was a teardrop tattoo under his eye.

The Gilroy jewelry store was about 35 miles from the site of defendant's court-related appointment in Santa Clara County on May 19, which appointment was reflected

2

in (1) a document found inside the May 22 getaway vehicle, and (2) a court calendar docket admitted into evidence without objection by defendant.

A May 24, 2017 complaint accused defendant and four codefendants of committing multiple crimes in connection with the May 22, 2017 robbery. Three codefendants resolved their charges, and an August 2018 information charged defendant and one remaining codefendant with four counts of second degree robbery (Pen. Code, § 211; counts one through four),[1] active participation in a criminal street gang (§ 186.2,; subd. (a); count five), and conspiracy to commit a crime (§ 182, subd. (a)(1); count six). The information also alleged: (1) counts one through five were committed for the benefit of a criminal street gang with the specific intent to promote criminal conduct by gang members (§ 186.22, subd. (b)(1)); (2) the value of the property taken or damaged exceeded $200,000 (former § 12022.6, subd. (b)); and (3) defendant had a prior prison term (§ 667.5, subd. (b)).

At an in limine hearing, and over defendant's objection, the trial court allowed the prosecution to present evidence of defendant's involvement in the uncharged May 19 robbery, as that evidence was "both material and highly relevant to prove common plan, scheme and identity," under section 1101 of the Evidence Code.[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] Evidence Code section 1101 provides: "(a) Except as provided in this section . . . , evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, . . . ) other than his or her disposition to commit such an act.

"(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

At trial, a Roseville police officer testified that People's exhibit 112 was a "mug shot" or booking photograph of defendant, taken on May 22, and People's exhibit 111 was an enlarged image of that photograph. The officer further testified that, in the photograph, defendant had "what appears to be a tattoo under his right eye," which was consistent with the evidence that one of the suspects in the Gilroy robbery appeared to have a tattoo of a teardrop.

On cross-examination, the officer testified that looking at defendant in the courtroom, he did not see a tattoo under defendant's right eye.

In closing statements, defense counsel argued the evidence did not establish that all of the men found inside the apartment were involved in the May 22 robbery.

The prosecutor argued the evidence demonstrated defendant was one of the five men involved in the May 22 robbery, in part, because his "DNA was found in [a] mask left in that get-away vehicle," and he was one of the five males detained in the apartment by law enforcement.

The prosecutor also argued the May 19 robbery was probative of defendant's participation in the May 22 robbery because the two robberies were "almost identical. The only thing that's different is the number of people involved. They went in with bats. They went with hoods, faces covered. They went straight for the watches, and they left. They actually left in the same vehicle."

The prosecutor reminded the jury: (1) three days separated the uncharged crime and the charged crime; (2) "probation paperwork, dated May 19th, 2017," indicating defendant "had a court date in Santa Clara County that day, which [was] within 33 miles" of the Gilroy robbery, "was found in the center console" of the vehicle on May 22, 2017; (3) under the mask with defendant's DNA on it, found in the May 22 getaway vehicle, there was a card for the jewelry store that was robbed on May 19; (4) "one of the suspects" in the May 19 robbery "had what appeared to be a teardrop tattoo under his

4

eye," and in "the booking photo of the [d]efendant taken on May 22nd, 2017," "there appears to be a tattoo that looks like a teardrop" under defendant's right eye.

The trial court instructed the jury it could consider evidence of the uncharged May 19 robbery "only if the People have proved by a preponderance of the evidence that [d]efendant, in fact, committed the offenses." "If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide . . . [d]efendant committed the uncharged offense, you may but are not required to consider that evidence for the limited purpose of deciding whether [d]efendant was a person who committed the offenses . . . alleged in this case or [d]efendant had a plan or scheme to commit the offenses alleged in this case. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and the charged offenses. Do not consider this evidence for any other purpose."

In May 2019, the jury found defendant guilty of counts one through four, and found "true" (1) the section 186.22, subdivision (b) gang allegations, and (2) the section 12022.6 allegation. Defendant admitted the prior prison term allegation. The jury deadlocked on counts five and six, and the trial court declared a mistrial as to those counts.

At a July 2019 sentencing hearing, the trial court imposed an aggregate sentence of 19 years in state prison, consisting of three years (the middle term) on count one, and three consecutive terms of one year each (one-third the midterm) on counts two through four; a consecutive 10-year term for count one's gang enhancement (and three concurrent 10-year terms for the gang enhancements on counts two through four); a consecutive two-year term for the former section 12022.6 enhancement; and a consecutive one-year term for the prior prison term enhancement.

As for restitution to the jewelry store robbed on May 22 (§ 1202.4, subd. (f)), after the parties stipulated to the amount, the trial court ordered defendant to pay $208,000.

Defendant timely appealed.

5

DISCUSSION

I

Defendant argues the trial court erred by admitting evidence of the May 19 robbery to prove he participated in the May 22 robbery.

Acknowledging "there were sufficient similarities between the uncharged and charged robberies," defendant maintains there was not sufficient evidence that *he* committed the uncharged robbery. Specifically, defendant contends evidence of the May 19 robbery was "inadmissible" because the prosecution "could not prove [defendant's] connection to the uncharged robbery by a preponderance of the evidence."

Defendant further contends that even if evidence of the May 19 robbery was admissible under Evidence Code section 1101, (1) the trial court erred by not excluding the evidence under Evidence Code section 352, as the "prejudicial impact of" the evidence "far outweighed any legitimate probative value"; and (2) thereby rendered defendant's trial fundamentally unfair.

The People argue the trial court did not err.

We agree with the People.

A.    *Standard of review*

Under the abuse of discretion standard of review applicable to trial court rulings on the admissibility of evidence, " 'a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Kovacich* (2011) 201 Cal.App.4th 863, 884.)

B.    *Evidence Code section 1101*

" '[E]vidence of uncharged crimes is admissible to prove, among other things, the identity of the perpetrator of the charged crimes, the existence of a common design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes. (Evid. Code, § 1101.) Evidence of uncharged crimes is admissible to prove

6

identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent.' " (*People v. Lenart* (2004) 32 Cal.4th 1107, 1123.)

"To be relevant to prove identity, the uncharged crime must be highly similar to the charged offenses, while a lesser degree of similarity is required to establish relevance to prove common design or plan, and the least similarity is required to establish relevance to prove intent. [Citations.] [¶] Finally, for uncharged crime evidence to be admissible, it must have substantial probative value that is not greatly outweighed by the potential that undue prejudice will result from admitting the evidence. [Citations.]" (*People v. Lenart, supra*, 32 Cal.4th at p. 1123.)

To the extent defendant contends the trial court was itself required to make a threshold determination—by a preponderance of the evidence—that defendant participated in the May 19 robbery before admitting evidence of it, we disagree. The trial court was required only to determine that the *jury* could so find by a preponderance of the evidence. (See *People v. Leon* (2015) 61 Cal.4th 569, 599 ["The threshold *admissibility* of uncharged crimes evidence does not require proof that the defendant was the perpetrator in both sets of offenses" if " 'the evidence is sufficient to sustain a finding that the defendant committed both sets of crimes' "]; *People v. Carpenter* (1997) 15 Cal.4th 312, 382 [citing *Huddleston v. United States* (1988) 485 U.S. 681 [99 L.Ed.2d 771] for the proposition that "[i]f the jury finds by a preponderance of the evidence that defendant committed the other crimes, the evidence is clearly relevant and may therefore be considered"], superseded by statute on other grounds as recognized by *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1106; cf. *Huddleston, supra*, at p. 689 [the prosecution need *not* prove "similar act evidence" by a preponderance of the evidence; rather, similar act evidence is admissible "if the jury can reasonably conclude that the act occurred and that the defendant was the actor"].)

Here, as defendant concedes, there were many similarities between the May 19 and May 22 robberies: (a) multiple men, (b) wearing hooded sweatshirts with the hoods up, (c) at least some perpetrators wearing masks, (d) entered a jewelry store during business hours, (e) used baseball bats to break open a display case, (f) removed multiple watches from the case, and (g) drove away in a black SUV.

Further, the robberies occurred three days apart.

Defendant's involvement in the May 19 robbery was suggested by (a) the very close proximity of a card for the jewelry store that was robbed on May 19 and the mask containing defendant's DNA found in the May 22 getaway vehicle; (b) court-related paperwork indicating defendant had a May 19 appointment about 35 miles away from the jewelry store robbed that day, with this store about 165 miles away from the May 22 robbery;[3] and (c) a witness to the May 19 robbery saw what appeared to be a teardrop tattoo under one of the robber's eyes and in defendant's May 22 booking photograph there appears to be a mark under his right eye consistent with a teardrop tattoo.[4]

Given this evidence, we conclude the trial court's ruling—that the jury *could* find by a preponderance of the evidence that defendant was one of the May 19 robbers, and that, if the jury so found, it could (but was not required to) consider evidence of the May

---

[3] On our own motion, we take judicial notice of the driving distance between Roseville and Gilroy. (See *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.* (2020) 55 Cal.App.5th 381, 391, fn. 5.)

[4] That a police officer on the witness stand *two years later* did not see a mark consistent with a teardrop tattoo on defendant's face, does not negate the evidence. (Cf. *People v. Mixon* (1982) 129 Cal.App.3d 118, 128-131 [a witness's personal perception of defendant's appearance when a crime was committed, in conjunction with a photograph of defendant from around the same time, may aid the jury in determining whether defendant—whose appearance had changed by the time of trial—was the perpetrator, as defendant's "appearance at the time of the robbery was . . . more consonant with the . . . prior perception than it was with his appearance at trial"].)

19 robbery to decide whether the defendant committed the May 22 robbery—was not arbitrary, capricious, or patently absurd.

### C. *Evidence Code section 352*

Further, admission of the May 19 robbery evidence was not an abuse of discretion under Evidence Code section 352, which gives the trial court discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

The risk of prejudice was not unusually significant here. The uncharged robbery was no more inflammatory than the charged offenses (*People v. Eubanks* (2011) 53 Cal.4th 110, 144), and the evidence was presented quickly, without unnecessary details. The jury also was specifically instructed that evidence of the uncharged robbery could be considered only for limited purposes and could not be used to draw the conclusion that defendant has a bad character or predisposition to commit crimes. We presume the jury understood and followed the trial court's instruction (*People v. Sanchez* (2001) 26 Cal.4th 834, 852), which mitigated the potential for prejudice. (*People v. Cage* (2015) 62 Cal.4th 256, 275.)

Accordingly, we conclude the trial court acted within its discretion in finding evidence of the uncharged May 19 robbery was relevant and sufficiently similar to the charged offenses to prove identity and a common plan. We further conclude the trial court acted reasonably in concluding the probative value of the evidence was not substantially outweighed by the risk of prejudice, confusion, or undue consumption of time.

### D. *Fairness of the trial*

Because we conclude that the evidence was properly admitted under state law evidentiary rules, we also reject defendant's constitutional argument. "The 'routine

9

application of state evidentiary law does not implicate [a] defendant's constitutional rights.' [Citation.]" (*People v. Hovarter* (2008) 44 Cal.4th 983, 1010.)

II

Defendant argues the one-year enhancement imposed pursuant to section 667.5 must be stricken in light of Senate Bill No. 136 (2019-2020 Reg. Sess.). The People did not address this issue in their brief. In any event, we agree with defendant, and will remand for resentencing.

"On October 8, 2019, . . . the Governor signed Senate Bill No. 136 (2019-2020 Reg. Sess.), which amended section 667.5, subdivision (b). [Citation.] Under the amendment, the one-year enhancement in section 667.5, subdivision (b) applies only if the defendant's prior prison term was 'for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.' (Stats. 2019, ch. 590, § 1.) [¶] The amendment to section 667.5, subdivision (b) became effective on January 1, 2020. [Citation.]" (*People v. Petri* (2020) 45 Cal.App.5th 82, 93-94.)

" '[W]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date.' [Citation.] By eliminating the one-year enhancement for prior prison terms that were not imposed for sexually violent offenses, the newly amended section reduces the punishment for such offenses. [¶] Because [defendant's] conviction is not yet final, he is entitled to the retroactive benefit of the change in law." (*People v. Winn* (2020) 44 Cal.App.5th 859, 872.)

The one-year prior prison term enhancement imposed under section 667.5, former subdivision (b), must be stricken. Because the trial court exercised discretion in selecting the middle rather than the upper term on count one, remand for resentencing is appropriate. (*People v. Buycks* (2018) 5 Cal.5th 857, 893, 896, fn. 15.)

10

Defendant argues the victim restitution award was a joint and several obligation, and that the abstract of judgment should be amended to reflect that. The People also did not brief this issue.

We agree with defendant that the trial court intended a joint and several restitution order.

In *People v. Blackburn* (1999) 72 Cal.App.4th 1520, two defendants were convicted in the murder of two teenage boys. The court ordered each defendant to pay direct victim restitution in the total amount the victims' families had incurred in expenses. (*Id*. at p. 1533.) The defendants argued the orders would result in unjust enrichment. The defendant who was sentenced second requested his restitution order be stayed until the other defendant died or met the payment requirement. (*Id*. at p. 1535.) The appellate court noted the trial court had authority to impose a joint and several restitution order and concluded: "It seems glaringly obvious that is what it did here. In this light, there is no double recovery; nor is [one defendant] entitled to have [the other defendant's] restitution obligation credited against his. Of course, each defendant is entitled to a credit for any actual payments by the other. To make sure this is clear (though out of an excess of caution), we will modify the judgment so as to provide expressly that the direct victim restitution ordered is joint and several." (*Ibid*.)

As in *People v. Blackburn, supra*, 72 Cal.App.4th 1520, we conclude the trial court here intended a joint and several restitution order. We will modify the judgment so as to provide expressly that the direct victim restitution ordered is joint and several.

## DISPOSITION

The one-year prior prison term enhancement imposed under section 667.5, former subdivision (b), is stricken, and the judgment is modified to provide expressly that the direct victim restitution ordered is joint and several with defendant's codefendant in the case. The matter is remanded for resentencing. Following resentencing, the trial court

shall forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


                                                      _____KRAUSE_____, J.


We concur:


_____ROBIE_____, Acting P. J.


_____HOC_____, J.