Filed 12/30/21  P. v. Swope CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL EDWARD SWOPE,<br><br>    Defendant and Appellant. | C091436<br><br>(Super. Ct. No. P17CRF0001) |

A jury found defendant Michael Edward Swope guilty of the murder of John Doe (count 1), assault on a child under 8 years old causing death (count 2—Pen. Code, § 273ab, subd. (a)),[1] and three counts of felony child abuse (counts 3-5—§ 273a, subd. (a)).  The jury also found true with respect to counts 3 through 5 that defendant

---

[1] Undesignated statutory references are to the Penal Code.

1

personally inflicted great bodily injury on a child under 5 years old. (§ 12022.7, subd. (d).)

The court sentenced defendant to 25 years to life in prison for count 2 plus a determinate term of 12 years. The court calculated the determinate term as follows: the middle term of 4 years plus 5 years for the enhancement on count 3, and 16 months (one-third the middle term) plus 20 months for the enhancement on count 4. The court imposed a concurrent term of 4 years plus 5 years for the enhancement on count 5. The court stayed a sentence of 15 years to life on count 1 pursuant to section 654.

On appeal, defendant argues his trial counsel rendered ineffective assistance by failing to seek suppression of: (1) his communications with his wife, and (2) his statement to law enforcement that his daughter jumped on Doe the morning of his death. Defendant also contends the cumulative effect of these alleged instances of ineffective assistance requires reversal. We reject defendant's assertions of ineffective assistance of counsel. As such, we also reject his assertion of cumulative error. Defendant further argues, and the People concede, that the trial court miscalculated his custody credits. In supplemental briefing, defendant argues, and the People concede, that the matter should be remanded for resentencing in light of recent amendments to section 654. We accept both of the People's concessions and will remand for the trial court to consider whether to exercise its new discretion under section 654. On remand, the trial court shall correct the calculation of custody credits as described in this opinion. In all other respects the judgment is affirmed.

## I. BACKGROUND

We dispense with a detailed recitation of the facts because it is unnecessary to the issues on appeal. For context, however, we explain that Doe's mother testified at trial. She said she had been married to defendant for several years when she gave birth to Doe on November 5, 2016. She and defendant have a daughter who was about two and half

2

years old when Doe was born.  On the morning of December 18, 2016, defendant's wife found Doe in his crib, not breathing.

Three days later, defendant received a telephone call from El Dorado County Sheriff's detectives who wanted defendant and his wife to come in to go over more paperwork related to Doe's death.  Defendant's father-in-law drove the couple to the sheriff's substation where detectives interviewed them separately.  The detectives told defendant's wife that her baby had died from a head injury and that he had 14 broken ribs.  At this point, she told the detectives that defendant was rough with the baby and the baby was not his.  The detectives asked her if they could put her and defendant in a room together to see what was said.  A video recording of defendant's interview with detectives and his discussion with his wife was played for the jury.

## II.  DISCUSSION

### A.    *Alleged Ineffective Assistance of Counsel*

Defendant argues his trial counsel rendered ineffective assistance in several ways.

To establish a claim of ineffective assistance of counsel, defendant must show: (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) "resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

"When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance.  It is particularly difficult to prevail on an *appellate* claim of ineffective assistance.  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory

explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai, supra*, 57 Cal.4th at p. 1009.)

### 1. *Marital Communications Privilege*

Defendant argues his communications with his wife "pervaded this case" and trial counsel rendered ineffective assistance by failing to seek suppression of his statements to his wife under the marital communications privilege.

Evidence Code section 980, subject to certain exceptions, allows one spouse to prevent another from disclosing a communication that "was made in confidence between him or her and the other spouse while they were spouses."

One exception, which was identified by neither party on appeal, is set forth in Evidence Code section 985, subdivision (a). Under this provision, there is no privilege "in a criminal proceeding in which one spouse is charged with . . . [¶] [a] crime committed at any time against the person or property of the other spouse or of a child of either." As defendant was charged with the murder of his wife's child, any objection on the basis of the martial communication privilege would have been futile. Defendant has failed to establish that his trial counsel was ineffective in failing to object on the basis of the marital communication privilege. (See *People v. McPeters* (1992) 2 Cal.4th 1148, 1173, superseded by statute on another ground as stated in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1106 ["Defense counsel is not required to advance unmeritorious arguments on the defendant's behalf"].)

### 2. *Defendant's Statement to Law Enforcement*

Defendant further contends his trial counsel rendered ineffective assistance by failing to seek suppression of his statement to law enforcement that his daughter jumped on Doe the morning of his death on the grounds that the statement was made

4

involuntarily or that, by the time it was made, the interview had become custodial and no *Miranda*[2] warnings were provided.

The interview apparently began with detectives asking for defendant's cell phone and defendant giving it to them along with the password. The detectives told him more than once that he could stop at any time. The interview lasted about four hours including breaks.

Eventually, the detectives told defendant that Doe had a very serious skull fracture that had to have occurred a few hours before his death. Defendant indicated this was where his daughter had kicked Doe about a week earlier. The detectives also told defendant they found fractured ribs that were several weeks old. Defendant said he had told them everything he knew about the injuries. The detectives repeatedly stated they were looking for "the truth."

One detective told defendant he would not be arrested that day and would be leaving on his own accord, but "somebody did something wrong. And that's what we need to find out. I'm not accusing you. I'm not going to accuse her. But I'm going to accuse one of you. [¶] . . . [¶] Maybe both of you."

Near the end of the interview, defendant said his daughter had jumped on Doe's head, but denied that it happened the morning of Doe's death. Defendant said he did not want his daughter to be blamed. He repeatedly told the detectives to blame him. The detectives told him they wanted the truth. Eventually, a detective said he would not do anything to defendant's daughter. Defendant said, "Yes, but that doesn't change my fears." A detective asked what defendant's fears were. Defendant said he was afraid they would take his daughter away. A detective replied, "I will take her – listen to me right now. This is the most important thing I'm going to tell you all night. I will take her

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

5

away, and CPS will have her if I don't know what the truth is. If I don't know, if you did or [your wife] did, and if it was intentional or accident, if I think that you did this on purpose, you will never see your daughter again; you understand that? If you tell me something that makes sense and you're honest with me, then we can move forward. At least she'd have one parent or two, that would be great. But if you sit in here and lie to me and I don't know what happened to your son, even if it was an accident, if I don't have that answer, I have a duty as a law-enforcement officer to protect your daughter, even if it's from you because without the truth, I don't know who you are. I don't know if you're a good guy or a bad guy." Defendant then asked if he could have "really hurt [Doe's] ribs by swaddling him too tightly?" They discussed this possibility and defendant said, "I didn't hurt his head in any way." A detective responded, "Then tell me what happened so we can keep your family together. You think you['re] protecting your daughter, and you can do it now by telling the truth." The other detective added, "You're making it worse." Defendant apologized, said he was not a liar and then told the detectives his daughter jumped off the coffee table onto Doe while he was on the floor Defendant explained, "[h]e wasn't dead. I kept checking on him. I calmed him down, and I laid him down. Just please make me the bad guy." A detective said the injury was not caused by the daughter jumping. Defendant said, "I don't have another truth" and "[t]hen tell me what you want to hear."

        *a.     Miranda*

We first address defendant's alternative assertion that his trial counsel was ineffective for failing to seek to suppress his statement that his daughter jumped on Doe because, at least by the time he made it, the interview had become custodial and no *Miranda* warning had been given. " 'An interrogation is custodial, for purposes of requiring advisements under *Miranda*, when "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." ' " (*People v. Linton* (2013) 56 Cal.4th 1146, 1167.) "The test for *Miranda* custody is, ' "would a reasonable

6

person have felt he or she was not at liberty to terminate the interrogation and leave." ' [Citation.] The objective circumstances of the interrogation are examined, not the ' "subjective views harbored by either the interrogating officers or the person being questioned." ' " (*People v. Kopatz* (2015) 61 Cal.4th 62, 80.)

"Although no one factor is controlling, the following circumstances should be considered: '(1) [W]hether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of questioning.' [Citation.] Additional factors are whether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether police officers dominated and controlled the interrogation or were 'aggressive, confrontational, and/or accusatory,' whether they pressured the suspect, and whether the suspect was arrested at the conclusion of the interview." (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403-1404.) We disagree with defendant's assertion that the interview was accusatory in tone. Rather, we agree with the People that the questions were general and neutral investigative questions. Defendant went to the sheriff's substation where he was interviewed by two detectives over a period of four hours who were not dressed in uniform. Defendant was not arrested, was told he would not be arrested, and was repeatedly told he was free to leave. Defendant chose to hand over his phone to detectives. He did not know until the end of the interview that the officers were not giving it back. A reasonable person would have felt free to leave. Thus, we reject defendant's assertion that a *Miranda* advisement was required. His trial counsel was not ineffective for not seeking to suppress his statement to law enforcement on this ground.

*b.      Voluntariness*

We now turn to defendant's primary assertion that his trial counsel rendered ineffective assistance by not seeking to exclude the statement that his daughter jumped on Doe as involuntary.  " 'A statement is involuntary if it is not the product of " 'a rational intellect and free will.' " [Citation.]  The test for determining whether a confession is voluntary is whether the defendant's "will was overborne at the time he confessed." ' " (*People v. McWhorter* (2009) 47 Cal.4th 318, 346-347.)

Defendant argues his statement was coerced by detectives' threats to arrest his wife and take away his daughter if he did not provide a satisfactory explanation.  "A confession may be found involuntary if extracted by threats or violence, obtained by direct or implied promises, or secured by the exertion of improper influence." (*People v. McWhorter*, *supra*, 47 Cal.4th at p. 347.)  However, "[i]n evaluating the voluntariness of a statement, no single factor is dispositive." (*People v. Williams* (2010) 49 Cal.4th 405, 436.)  In addition to considering " ' "the crucial element of police coercion," ' " a motion to exclude would require the court to also consider other factors, including " ' "the length of the interrogation [citation]; its location [citation]; its continuity" as well as "the defendant's maturity [citation]; education [citation]; physical condition [citation]; and mental health." ' " (*Ibid*.)  As to these factors, defendant observes he was interviewed by two detectives who had his phone for about four hours in a room at a sheriff's substation and no *Miranda* advisement was provided.  We note defendant has a college degree, the interview included breaks, and while defendant was emotional, the transcript indicates he told his wife he did not believe the detectives' threats:

"[Defendant]:  . . . They said they'll take [our daughter] away.

"[Wife]:  They said that?

"[Defendant]:  No.  They're just trying to make (inaudible)."

8

"Because the question of coercion turns on the intensely factual inquiry into the totality of the circumstances [citation], it is an especially poor candidate for first-time consideration on appeal." (*People v. Quiroz* (2013) 215 Cal.App.4th 65, 78.)

We reject defendant's assertion that trial counsel had no rational tactical basis for not moving to suppress.

Defendant's argument that there was no reasonable strategy for failing to suppress his statement that his daughter jumped on Doe on the day of his death is based solely on his contention that the statement was prejudicial. In support of that assertion, he observes the jury was instructed with CALCRIM No. 362 that if he made a false or misleading statement before trial relating to the charged crime, "knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt." Further, during deliberations, the jury asked to see his entire interview and for his testimony to be read back. The jury rewatched the entire interview, continued their deliberations, and then changed their minds and declined the readback. As we will discuss next, in light of the fact the marital communications privilege did not apply, and similar evidence was introduced from other sources, this prejudice argument fails and defendant cannot demonstrate his trial counsel could have had no tactical reason for not seeking to exclude this particular statement to law enforcement.

Defendant's wife testified that he told her that their daughter had jumped on Doe on the morning of his death for the first time when they were placed in a room together. This was part of the video the jury rewatched. Defendant testified that he told her he was going to tell the officers that their daughter jumped on Doe the morning he died. Defendant offers no basis for excluding his wife's testimony or his conversation with her outside of the inapplicable marital communications privilege. Nor is any basis for excluding her testimony readily apparent. (See, e.g., *People v. Tate* (2010) 49 Cal.4th 635, 686-687 ["Even when the suspect is in the process of a custodial interrogation,

9

voluntary statements to someone the suspect does not believe is a police officer or agent, in a conversation the suspect assumes is private" do not implicate the suspect's *Miranda* rights]; *People v. Webb* (1993) 6 Cal.4th 494, 526 [" '*Miranda* forbids coercion, not mere strategic deception by taking advantage of a suspect's misplaced trust in one he supposes to be a fellow prisoner' or ally"]; *People v. Jenkins* (2004) 122 Cal.App.4th 1160, 1173 [nothing improper or coercive about placing defendant and another suspect alone together in holding cell and secretly tape-recording their conversation].)  As such, the jury would have heard his recorded statement to his wife and her testimony even if his statement to the detectives was excluded.  Moreover, defendant testified that he made up this story to placate the detectives.  In closing, his counsel also argued he made the story up in response to the detectives' questioning and because they threatened to take his daughter away.  Particularly given that defendant's version of his conversation with his wife appeared to conflict with his wife's version, it would have been reasonable for trial counsel to want the jury to hear this part of the interview with the detectives to support defendant's explanation.  Defendant does not identify any other portion of the interview that he views as damaging.  Regardless of whether a motion to suppress was likely to succeed, defendant has failed to demonstrate his counsel lacked a rational tactical purpose for failing to make it.

Defendant's assertions of ineffective assistance of counsel are without merit.

B.     *No Cumulative Error*

We reject defendant's contention that reversal is required based on the cumulative effect of the foregoing alleged errors.  "We have identified no errors; there is, accordingly, nothing to cumulate."  (*People v. Duff* (2014) 58 Cal.4th 527, 568.)

C.     *Custody Credits*

Defendant contends, and the People concede, that the trial court miscalculated his custody credits as 1,284 days.  We accept the People's concession.  Defendant was taken into custody on December 29, 2016, and sentenced on January 31, 2020.  His total actual

10

credit should be 1,129 days and his conduct credit (limited to 15 percent pursuant to section 2933.1) should be 169 days for a total of 1,298 days.  On remand, the court should correct the sentencing minute order and abstract of judgment to reflect 1,129 days of actual custody credit plus 169 days of conduct credit.

D.      *Section 654*

As previously set forth, the court imposed a sentence of 25 years to life for assault on a child under 8 years old causing death (count 2) and stayed a sentence of 15 years to life for murder (count 1) pursuant to section 654.  In supplemental briefing, defendant argues, and the People concede, that remand is required so that the trial court may exercise its new discretion under amended section 654 regarding which of these two counts to stay.  At the time of sentencing, section 654, subdivision (a), provided that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Thus, the trial court was required to impose the sentence for assault on a child causing death because it was the longest.  On October 1, 2021, the Governor signed Assembly Bill No. 518 (2021-2022 Reg. Sess.), which amended this provision, effective January 1, 2022, to remove the requirement that the court impose the longest potential term of imprisonment:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (Stats. 2021, ch. 441, § 1.)

The parties agree defendant is entitled to the benefit of this change in the law under the retroactivity rule articulated in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  "The *Estrada* rule rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, 'a legislative body ordinarily intends for ameliorative changes to the criminal law

11

to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 881.)  We agree that the amendment to section 654 applies to defendant's appeal.  (See *People v. Stamps* (2020) 9 Cal.5th 685, 699 ["Eliminating the prior restriction on the court's ability to strike a serious felony enhancement in furtherance of justice constitutes an ameliorative change within the meaning of *Estrada*"].)  Further, " '[d]efendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.'  [Citation.]  In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

The record before us does not clearly show that the trial court would have reached the same conclusion had it been aware of its discretion under Assembly Bill No. 518. Accordingly, we agree with the parties that remand is appropriate in this case to allow the trial court to exercise its new discretion as to whether to stay count 1 or 2 under section 654.

## III.  DISPOSITION

The case is remanded to the trial court for it to consider whether to exercise its discretion under Assembly Bill No. 518.  The trial court is directed to correct the abstract of judgment and sentencing minute order to reflect 1,129 days of actual custody credit plus 169 days of conduct credit.  The court shall forward a certified copy of the new abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

BLEASE, Acting P. J.

/S/

HULL, J.